**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------X        Case No.
JAMILLA JORDAN,

                                        Plaintiff,

                                                                    **COMPLAINT**
                        - against -

BRUCKNER FOREVER YOUNG SOCIAL ADULT        **PLAINTIFF DEMANDS**
DAY CARE INC. and GENE BENFELD, *Individually*,        **A TRIAL BY JURY**

                                        Defendants.
------------------------------------------------------------X

Plaintiff JAMILLA JORDAN (hereinafter "Plaintiff" or "Plaintiff JORDAN") by her

attorneys, PHILLIPS & ASSOCIATES, Attorneys at Law, PLLC, hereby complains of Defendant

BRUCKNER FOREVER YOUNG SOCIAL ADULT DAY CARE INC. (hereinafter "Defendant

FOREVER YOUNG") and Defendant GENE BENFELD (hereinafter "Defendant BENFELD")

upon personal knowledge, as well as upon information and belief, by alleging and averring as

follows:

## NATURE OF THE CASE

1.        Plaintiff JORDAN brings this action alleging that Defendants violated Title VII of the Civil

        Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (amended in 1972, 1978

        and by the Civil Rights Act of 1991, Pub. L. No. 102-166) ("Title VII"), the New York

        State Human Rights Law, New York State Executive Law § 296, *et seq.* ("NYSHRL") and

        the New York City Human Rights Law, New York City Administrative Code § 8-107(1),

        *et seq.* ("NYCHRL") and seeks damages to redress the injuries she has suffered as a result

1

of being subjected to discrimination on the basis of her sex/gender (sexual harassment) as well as her sexual orientation, and retaliation for complaining of sexual harassment.

## JURISDICTION AND VENUE

2.      The jurisdiction of this Court is proper under 42 U.S.C. § 2000e-5(f)(3), and 28 U.S.C. §§ 1331 and 1343.

3.      This Court has supplemental jurisdiction over Plaintiff's claims brought under state and city law pursuant to 28 U.S.C. § 1367.

4.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) as the Defendant resides within the Southern District of New York and a substantial part of the events or omissions giving rise to the claim occurred therein.

## PROCEDURAL PREREQUISITES

5.      Plaintiff JORDAN filed charges of discrimination upon which this Complaint is based with the Equal Employment Opportunity Commission ("EEOC").

6.      Plaintiff JORDAN received a Notice of Right to Sue ("Notice") from the EEOC, dated _____, with respect to the charges of discrimination contained herein. A copy of the Notice is annexed hereto as Exhibit A.

7.      This Action is being commenced within ninety (90) days of said Notice.

8.      Contemporaneously with the filing of this Complaint, Plaintiff JORDAN mailed a copy of the Complaint to the New York City Commission on Human Rights ("NYCCHR") and the Office of the Corporation Counsel of the City of New York ("Corporation Counsel") pursuant to the notice requirements of Section 8-502 of the New York City Administrative Code. A copy of the certificate of service of the complaint on the NYCCHR and the Corporation Counsel is annexed hereto as Exhibit B.

2

## THE PARTIES

9.    At all times relevant hereto, Plaintiff JORDAN was a resident of the State of New York and County of Richmond.

10.   At all times relevant hereto, Defendant FOREVER YOUNG was and is a domestic for-profit corporation duly existing pursuant to, and by virtue of, the laws of the State of New York, with its principal place of business located at 80 Bruckner Blvd., Bronx, New York 10454.

11.   At all times relevant hereto, Defendant BENFELD was and is an individual residing in the State of New York, as well as Program Director for Defendant FOREVER YOUNG. As such, he had the authority to hire, terminate, and affect the terms and conditions of Plaintiff's employment or to otherwise influence the decision-making regarding same.

12.   At all times relevant hereto, Defendant FOREVER YOUNG was Plaintiff JORDAN's employer under Title VII.

13.   At all times relevant hereto, Defendant FOREVER YOUNG was Plaintiff JORDAN's employer under the NYSHRL.

14.   At all times relevant hereto, Defendant FOREVER YOUNG was Plaintiff JORDAN's employer under the NYCHRL.

## MATERIAL FACTS

15.   In or around the last week of November 2021, Plaintiff JORDAN was hired by Defendant BENFELD as a Maintenance Worker for Defendant FOREVER YOUNG.

16.   Defendant FOREVER YOUNG is an adult day care facility that provides recreation and socialization for elderly and disabled clients.

17.   Plaintiff JORDAN worked from approximately 9:00 am to 3:00 pm or 4:00 pm, depending on when the facility closed each day and was paid $15.00 per hour.

18.   Plaintiff JORDAN was responsible for cleaning and maintaining Defendant FOREVER YOUNG's adult day care space, including cleaning the bathrooms, emptying the trash cans, and washing the floors.

19.   Plaintiff JORDAN excelled at her job, with both clients and coworkers noting that the facility had never been cleaner.

20.   Defendant BENFELD was Plaintiff JORDAN's direct supervisor, and frequently told Plaintiff that he was "so happy" he hired her.

21.   Within Plaintiff JORDAN's first month of working for Defendant FOREVER YOUNG, Defendant BENFELD began to instruct Plaintiff JORDAN to call male clients "baby" and "honey."

22.   When Plaintiff JORDAN asked Defendant BENFELD why she should not address clients by their names, he told her that she should do "anything" to keep the clients coming back to Defendant FOREVER YOUNG.

23.   Plaintiff JORDAN continued to protest Defendant BENFELD's instruction, but he told her to "sell her soul" if it meant clients returning. Defendant BENFELD went so far as to say he did not care if Plaintiff had to "say [she's] giving them pussy."

24.   Plaintiff JORDAN, despite feeling deeply uncomfortable with Defendant BENFELD's instruction, performed her job duties effectively, and kept the Defendant FOREVER YOUNG facility clean and safe for all clients.

25.    Plaintiff JORDAN tried her best to avoid extended conversations with the clients while she worked, as she did not want to have to pretend to be romantically interested in them, but could not avoid calling them "baby" and "honey" per Defendant BENFELD's instruction.

26.    Within the first thirty days of Plaintiff JORDAN's employment, Defendant BENFELD approached Plaintiff and told her that she would have to work as a security guard at the front door of the facility each morning and then would switch back to her custodial duties for the rest of the day.

27.    Plaintiff JORDAN is not trained or certified as a security guard and felt unsafe guarding the front door, but she felt she had no choice but to comply with Defendant BENFELD's order in order to keep her job.

28.    Thereafter, Plaintiff JORDAN began to sign in all guests each morning and then clean in the afternoons.

29.    Since the security guard position caused Plaintiff JORDAN to have more direct contact with Defendant FOREVER YOUNG clients, some male clients began to make clear that they were attracted to her.

30.    Plaintiff JORDAN would complaint to Defendant BENFELD whenever a male client was inappropriate with her, but Defendant BENFELD would repeat that Plaintiff should do anything to make sure that these male clients continued coming to Defendant FOREVER YOUNG to return and "spend their Medicaid" at the facility.

31.    In fact, whenever Defendant BENFELD noticed that a male client seemed to be attracted to Plaintiff JORDAN, he would instruct her to call the client on her personal cell phone to "convince" him to continue coming to Defendant FOREVER YOUNG, including pretending to be romantically interested in the client.

32. For example, a client, R.R., would noticeably ogle Plaintiff JORDAN and spoke to Plaintiff in such a way that she believed him to be romantically interested in her.

33. R.R.'s conduct was so overt that Defendant BENFELD took notice, but instead of protecting Plaintiff JORDAN from the unwanted advances of a client, Defendant BENFELD instructed Plaintiff to go out of her way to act as though she was romantically interested in R.R.

34. Defendant BENFELD told Plaintiff JORDAN to say R.R. was "her man," and when the facility hosted group or team games, to say "no one better take my man" when the teams were forming, referring to R.R.

35. When the facility held dances, Defendant BENFELD encouraged Plaintiff JORDAN to dance with R.R. and give him long hugs, even though it made Plaintiff uncomfortable to do so.

36. Because Plaintiff JORDAN was uncomfortable with the interactions Defendant BENFELD forced her to have with male clients, she complained to Defendant BENFELD on multiple occasions throughout her employment that she did not want to participate in these types of conversations with clients, was uncomfortable pretending to be romantically interested in these clients, and that she was a lesbian, so pretending to be romantically interested in male clients was especially offensive to her.

37. Defendant BENFELD, rather than address Plaintiff JORDAN's good faith complaint about being forced into these unwanted inappropriate interactions, told Plaintiff to continue interacting with the clients as she had done before. Furthermore, on approximately five occasions, Defendant BENFELD instructed Plaintiff specifically to not reveal her sexual orientation to the male clients.

6

38.     Plaintiff JORDAN felt horrified, hurt and humiliated that Defendant BENFELD was asking her to conceal her sexual orientation so that male clients would continue to show romantic interest in her.

39.     Plaintiff JORDAN also witnessed, at least on a weekly basis, Defendant BENFELD directing other female employees to flirt with male clients who showed romantic interest in them, even when they expressed discomfort in doing so, and to call those male clients using their personal cell phones after work hours.

40.     On multiple occasions, Defendant BENFELD gave Plaintiff JORDAN money and directed her to go buy flowers and bring them back to the Facility so that male clients could give the flowers to female employees they found attractive.

41.     Then, in or around January 2022, Plaintiff JORDAN contracted Covid-19 and called Defendant BENFELD to inform him that she had to quarantine.

42.     Shockingly, Defendant BENFELD responded by instructing Plaintiff JORDAN to not tell anyone else about her positive test and return to work the next day at the Facility wearing a mask and gloves.

43.     Plaintiff JORDAN strongly protested, because the clients of Defendant FOREVER YOUNG were elderly and many had additional health concerns, but Defendant BENFELD insisted that he would hire someone else for Plaintiff's job if she did not go to work.

44.     As such, Plaintiff JORDAN was forced to work in the Facility, while she was positive for Covid-19, and attempted to keep as much distance as possible between her and the clients to try and keep them safe.

45.  In addition to being forced to engage with the clients inappropriately by Defendant BENFELD, throughout her employment, Plaintiff JORDAN was subjected to aggressive behavior and discriminatory comments by some clients of Defendant FOREVER YOUNG.

46.  One particular client, J.L., was particularly aggressive to Plaintiff JORDAN, but Defendant BENFELD ignored Plaintiff's multiple complaints about J.L.'s behavior.

47.  By way of example, shortly after Plaintiff JORDAN began working for Defendant FOREVER YOUNG, she learned that J.L. was "helping" the prior maintenance worker with his or her tasks, including emptying the garbage cans and moving furniture as needed, and he expected to continue doing so as Plaintiff began working.

48.  One day, in or around February 2022, J.L. followed Plaintiff JORDAN into the storage closet and tried to take one of the small prizes that Defendant FOREVER YOUNG kept in stock as a reward for clients that did not belong to him.

49.  Plaintiff JORDAN instructed J.L. to leave the closet without the object he was attempting to steal, and he responded by yelling profanities at her.

50.  Plaintiff JORDAN complained about J.L.'s behavior to Defendant BENFELD and Yesenia, Manager, who laughed at Plaintiff for complaining about J.L., since he was a longtime client of Defendant FOREVER YOUNG.

51.  Shortly thereafter, Plaintiff JORDAN was moving tables around the facility when J.L. approached her and began to yell that she could not leave a table in a particular spot.

52.  Plaintiff JORDAN continued to do her work and attempted to ignore J.L., who became more belligerent and started to yell "Black bitch" and "African bitch" at Plaintiff repeatedly.

53.   Plaintiff JORDAN, who was deeply hurt by J.L.'s language, felt that she could not complain to Defendant FOREVER YOUNG management about J.L.'s behavior because of their dismissive response to her previous complaint.

54.   Then, the very next day, Plaintiff JORDAN was moving garbage cans around the facility to make them more accessible for a party.

55.   J.L. again disagreed with Plaintiff JORDAN's placement of the furniture, and went so far as to bring one of the garbage cans back to where it had been before Plaintiff moved it.

56.   Plaintiff JORDAN told J.L. to stop moving the cans, and he responded by saying "I move whatever the fuck I want" and again referred to Plaintiff as a "Black bitch" and "African bitch."

57.   Plaintiff JORDAN told J.L. sternly not to speak to her in that manner but he continued to yell at her.

58.   Plaintiff JORDAN then immediately went to Defendant BENFELD to complain about J.L.'s harassment and discriminatory statement.

59.   Once again, Defendant BENFELD did not take Plaintiff JORDAN's concerns seriously, and simply asked, "So you don't want him to help you?"

60.   Plaintiff JORDAN was upset by Defendant BENFELD's response and felt that her complaints were not taken seriously.

61.   Days later, Plaintiff JORDAN was acting as security guard one morning and told J.L. to sign in upon his arrival.

62.   J.L. said, "Don't tell me what to do bitch," and then sped past her without signing in while continuing to yell at Plaintiff JORDAN.

63. Plaintiff JORDAN, who could no longer contain her anger about J.L.'s continued behavior, went to the kitchen and began to complain, once again, about J.L. to Defendant BENFELD.

64. Plaintiff JORDAN was very upset and threatening to quit due to J.L.'s behavior.

65. Defendant BENFELD responded that J.L. was "just having a bad day," and then begged Plaintiff JORDAN not to quit her job because she was so valuable to the Defendant FOREVER YOUNG team.

66. Plaintiff JORDAN decided she would remain employed by Defendant FOREVER YOUNG because of how much she cared about the other clients who did not harass or demean her.

67. However, in or around late March 2022, Defendant BENFELD informed all of the female employees of Defendant FOREVER YOUNG that his birthday was in April, and that he would be having a birthday party with all of the clients at the facility.

68. Defendant BENFELD continued that he wanted all of the female employees to wear "schoolgirl skirts" for the occasion, and that he had ordered them to be delivered.

69. Plaintiff JORDAN was outraged and told Defendant BENFELD she would not be wearing the skirts because she felt it was extremely inappropriate.

70. Defendant BENFELD ignored Plaintiff JORDAN and continued to discuss the schoolgirl skirts in front of male clients, and even told the clients he would be ordering "Easter bunny" costumes for the female employees to wear during the Easter celebration later that month.

71. J.L., who was one of the male clients discussing the outfits with Defendant BENFELD, said, "no one wants to see [Plaintiff JORDAN] like that," and proceeded to laugh with Defendant BENFELD about Plaintiff's appearance.

72.   Defendant BENFELD did not reprimand J.L. for his offensive statement, even though Plaintiff JORDAN had repeatedly complained about his harassing and discriminatory behavior.

73.   After Plaintiff JORDAN informed Defendant BENFELD of her refusal to wear the skirt for his birthday, Defendant BENFELD became hostile towards Plaintiff.

74.   Within days of Plaintiff JORDAN's refusal to wear the skirt, Defendant BENFELD told Plaintiff JORDAN that she could no longer come to the facility and begin working at 8am, as she had done sporadically for her entire employment to increase her weekly hours, and that she needed to clock out when she sat down to eat lunch, which she had never been required to do previously.

75.   Based on the temporal proximity between Plaintiff JORDAN objecting to Defendant BENFELD's sexual harassment and Defendant BENFELD's alteration of these policies, it is clear that Defendant BENFELD subjected Plaintiff to retaliation for her complaint.

76.   Prior to Defendant BENFELD's birthday party, Plaintiff JORDAN left her employment with Defendant FOREVER YOUNG.

77.   After Plaintiff JORDAN stopped working at Defendant FOREVER YOUNG, she saw on the facility's Facebook page that Defendant BENFELD's birthday party took place, and that female employees were made to wear the schoolgirl skirts.

78.   Plaintiff JORDAN has been unlawfully discriminated against, humiliated, and degraded on the basis of her sex/gender. As a result, Plaintiff has suffered loss of rights, emotional distress, and loss of income and earnings.

79.   Defendants' actions and conduct were intentional for the purpose of harming Plaintiff JORDAN.

80. As a result of the acts and conduct complained of herein, Plaintiff JORDAN has suffered and will continue to suffer loss of income, future pecuniary losses, emotional pain and suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses. Plaintiff further experienced severe emotional and physical distress.

81. Because Defendants' conduct has been malicious, willful, outrageous, and done with full knowledge of the legion of law to the contrary, Plaintiff JORDAN demands punitive damages against the Defendants, jointly and severally.

**FIRST CAUSE OF ACTION**
**DISCRIMINATION UNDER TITLE VII**
**(Against Defendant FOREVER YOUNG)**

82. Plaintiff JORDAN repeats and realleges each and every allegation made in the above paragraphs of this Complaint.

83. This claim is authorized and instituted pursuant to the provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, for relief based upon the unlawful employment practices of Defendant FOREVER YOUNG.

84. Plaintiff complains that Defendant FOREVER YOUNG violated Title VII's prohibition against discrimination based, in whole or in part, upon an employee's sex.

85. Defendant FOREVER YOUNG engaged in unlawful employment practices prohibited by 42 U.S.C. § 2000e–2(a) by discriminating against Plaintiff because of her sex:

> It shall be an unlawful employment practice for an employer—
>
> (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, **sex**, or national origin; or

12

(2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

86.   Defendant FOREVER YOUNG engaged in unlawful employment practices prohibited by Title VII, by maintaining a hostile work environment where Plaintiff was repeatedly sexually harassed.

87.   Accordingly, as a result of the unlawful conduct of Defendant FOREVER YOUNG, Plaintiff has been damaged as set forth herein and is entitled to the maximum compensation available to her under this statute.

## SECOND CAUSE OF ACTION
## RETALIATION UNDER TITLE VII
### (Against Defendant FOREVER YOUNG)

88.   Plaintiff JORDAN repeats and realleges each and every allegation made in the above paragraphs of this complaint.

89.   Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-3(a) provides:

It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment ... because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

90.   Defendant FOREVER YOUNG violated the sections cited herein as set forth through, among other things, reducing her hours after her good-faith complaint of sexual harassment.

91.     Accordingly, as a result of the unlawful conduct of Defendant FOREVER YOUNG, Plaintiff has been damaged as set forth herein and is entitled to the maximum compensation available to her under this statute.

### THIRD CAUSE OF ACTION
### DISCRIMINATION UNDER THE NYSHRL

92.     Plaintiff JORDAN repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

93.     Executive Law § 296 provides that:

> It shall be an unlawful discriminatory practice: "(a) For an employer or licensing agency, because of an individual's age, race, creed, color, national origin, **sexual orientation**, military status, **sex**, disability, predisposing genetic characteristics, marital status, or domestic violence victim status, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment."

94.     Defendants engaged in an unlawful discriminatory practice by discriminating against the Plaintiff because of her sex (sexual harassment) and sexual orientation.

95.     Accordingly, as a result of the unlawful conduct of Defendants, Plaintiff has been damaged as set forth herein and is entitled to the maximum compensation available to her under this statute.

### FOURTH CAUSE OF ACTION
### RETALIATION UNDER THE NYSHRL

96.     Plaintiff JORDAN repeats and realleges each and every allegation made in the above paragraphs of this Complaint as if set forth herein at length.

97.     New York State Executive Law § 296(7) provides that it shall be an unlawful discriminatory practice: "For any person engaged in any activity to which this section

14

applies to retaliate or discriminate against any person because [s]he has opposed any practices forbidden under this article."

98.  Defendants violated the section cited herein as set forth.

99.  Accordingly, as a result of Defendants' unlawful conduct, Plaintiff JORDAN has been damaged as set forth herein and is entitled to the maximum compensation available to her under this statute.

## FIFTH CAUSE OF ACTION
## DISCRIMINATION UNDER THE NEW YORK STATE EXECUTIVE LAW
### (Against Defendant BENFELD)

100. Plaintiff JORDAN repeats and realleges each and every allegation made in the above paragraphs of this Complaint as if set forth herein at length.

101. New York State Executive Law § 296(6) provides that it shall be an unlawful discriminatory practice "For any person to aid, abet, incite, compel or coerce the doing of any acts forbidden under this article, or attempt to do so."

102. Defendant BENFELD violated this statute as set forth.

103. Accordingly, as a result of Defendant BENFELD's unlawful conduct, Plaintiff has been damaged as set forth herein and is entitled to the maximum compensation available to her under this statute.

## SIXTH CAUSE OF ACTION
## DISCRIMINATION UNDER THE NYCHRL

104. Plaintiff JORDAN repeats and realleges each and every allegation made in the above paragraphs of this complaint as if same were set forth herein fully at length.

105. The New York City Administrative Code § 8-107(1) provides that:

> It shall be an unlawful discriminatory practice: (a) For an employer
> or an employee or agent thereof, because of the actual or perceived

age, race, creed, color, national origin, **gender**, disability, marital status, **sexual orientation** or alienage or citizenship status of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment.

106.    Defendants engaged in an unlawful discriminatory practice in violation of the New York City Administrative Code § 8-107(1)(a) by creating and maintaining discriminatory working conditions, and otherwise discriminating against Plaintiff because of her gender (sexual harassment) and sexual orientation.

107.    Accordingly, as a result of the unlawful conduct of Defendants, Plaintiff has been damaged as set forth herein and is entitled to the maximum compensation available to her under this statute.

## SEVENTH CAUSE OF ACTION
## DISCRIMINATION UNDER THE NEW YORK CITY ADMINISTRATIVE CODE
### (Against Defendant BENFELD)

108.    Plaintiff JORDAN repeats and realleges each and every allegation made in the above paragraphs of this Complaint as if set forth herein at length.

109.    The New York City Administrative Code § 8-107(6) provides that it shall be unlawful discriminatory practice: "For any person to aid, abet, incite, compel; or coerce the doing of any of the acts forbidden under this chapter, or attempt to do so."

110.    Defendant BENFELD violated this statute as set forth.

111.    Accordingly, as a result of Defendant BENFELD's unlawful conduct, Plaintiff has been damaged as set forth herein and is entitled to the maximum compensation available to her under this statute.

16

## EIGHTH CAUSE OF ACTION
## DISCRIMINATION UNDER THE NEW YORK CITY ADMINISTRATIVE CODE

112. Plaintiff JORDAN repeats and realleges each and every allegation made in the above paragraphs of this Complaint as if set forth herein at length.

113. The Administrative Code of the City of New York § 8-107(13) provides for employer liability for discriminatory conduct by an employee, agent or independent contractor. This sub-section states:

   a. An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of any provision of this section other than subdivisions one and two of this section.
   b. An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of subdivision one or two of this section only where:

   1. the employee or agent exercised managerial or supervisory responsibility; or
   2. the employer knew of the employee's or agent's discriminatory conduct, and acquiesced in such conduct or failed to take immediate and appropriate corrective action; an employer shall be deemed to have knowledge of an employee's or agent's discriminatory conduct where that conduct was known by another employee or agent who exercised managerial or supervisory responsibility; or
   3. the employer should have known of the employee's or agent's discriminatory conduct and failed to exercise reasonable diligence to prevent such discriminatory conduct.

   c. An employer shall be liable for an unlawful discriminatory practice committed by a person employed as an independent contractor, other than an agent of such employer, to carry out work in furtherance of the employer's business enterprise only where such discriminatory conduct was committed in the course of such employment and the employer had actual knowledge of and acquiesced in such conduct.

114. Defendants violated the section cited herein as set forth.

115. Accordingly, as a result of Defendants' unlawful conduct, Plaintiff JORDAN has been damaged as set forth herein and is entitled to the maximum compensation available to her under this statute.

17

## NINTH CAUSE OF ACTION
## RETALIATION UNDER THE NYCHRL

116.   Plaintiff JORDAN repeats and realleges each and every allegation made in the above

paragraphs of this Complaint as if set forth herein at length.

117.   The Administrative Code of the City of New York § 8-107(7) provides that it shall be an

unlawful discriminatory practice:

> "For any person engaged in any activity to which this chapter applies
> to retaliate or discriminate in any manner against any person because
> such person has (i) opposed any practice forbidden under this
> chapter, (ii) filed a complaint, testified or assisted in any proceeding
> under this chapter, (iii) commenced a civil action alleging the
> commission of an act which would be an unlawful discriminatory
> practice under this chapter, (iv) assisted the commission or the
> corporation counsel in an investigation commenced pursuant to this
> title, (v) requested a reasonable accommodation under this chapter,
> or ([v]vi) provided any information to the commission pursuant to
> the terms of a conciliation agreement made pursuant to section 8-
> 115 of this chapter."

118.   Defendants violated the section cited herein as set forth.

119.   Accordingly, as a result of Defendants' unlawful conduct, Plaintiff JORDAN has been

damaged as set forth herein and is entitled to the maximum compensation available to her

under this statute.

## JURY DEMAND

120.   Plaintiff JORDAN requests a jury trial on all issues to be tried.

**WHEREFORE**, Plaintiff JORDAN respectfully requests a judgment against Defendants:

A.   Declaring that Defendants engaged in, and enjoining Defendants from continuing to

engage in, unlawful employment practices prohibited by the Title VII of the Civil Rights

Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.*, the New York State Human Rights

Law, New York State Executive Law, § 296, *et seq.*, the New York City Human Rights

18

Law, New York City Administrative Code § 8-107(1), *et seq.*, and New York State common law in that the Defendants discriminated against Plaintiff JORDAN on the basis of her sex/gender (sexual harassment) and sexual orientation, and subjected her to retaliation for complaining of sexual harassment;

B.    Awarding damages to Plaintiff JORDAN for all lost wages and benefits resulting from Defendant's unlawful discrimination, retaliation, and intentional infliction of emotional distress on Plaintiff, and to otherwise make her whole for any losses suffered as a result of such unlawful employment practices;

C.    Awarding Plaintiff JORDAN compensatory damages for mental, emotional and physical injury, distress, pain and suffering and injury to her reputation in an amount to be proven;

D.    Awarding Plaintiff JORDAN punitive damages;

E.    Awarding Plaintiff JORDAN attorneys' fees, costs, and expenses incurred in the prosecution of the action; and;

F.    Awarding Plaintiff JORDAN such other and further relief as the Court may deem equitable, just and proper to remedy Defendant's unlawful employment practices.

Dated: New York, New York
       October  5  , 2022

                                   PHILLIPS & ASSOCIATES,
                                   ATTORNEYS AT LAW, PLLC

                    By:    _____
                                   Dorina Cela, Esq.
                                   *Attorney for Plaintiff*
                                   45 Broadway, Suite 430
                                   New York, New York 10006
                                   (212) 248-7431
                                   dcela@tpglaws.com